UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL BROWN,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>SGT. DOBLER; CORIZON MEDICAL; SGT. SEGADELLI; IDAHO DEPARTMENT OF CORRETION; CPL STELZER; WARDEN BLADES; GRIEVANCE COORDINATOR HALLUM; and DEPUTY WARDEN KENNETH BENNETT,<br><br>　　　　　　Defendants. | Case No. 1:15-cv-00132-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court are several non-dispositive motions ripe for adjudication in this prisoner civil rights case (Dkts. 24, 26, 34, 36, 38, 39, 41, 42, and 43), as well as Plaintiff's Partial Motion for Summary Judgment (Dkt. 28). The Court finds that the decisional process would not be aided by oral argument. After reviewing the record and the arguments of the parties, the Court enters the following Order addressing all pending motions.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at Idaho State Correctional Center (ISCC). Plaintiff claims that, in August 2014, he was threatened by other ISCC inmates. Plaintiff informed Defendant Sergeant Dobler of these threats, but Dobler replied, "You are paranoid and making it up . . . stop wasting my time." (Compl., Dkt. 3-1, ¶¶ 157-61.) Several days later, Plaintiff was attacked and knocked unconscious by another inmate.

After the attack, Plaintiff was examined by an unidentified nurse, who took Plaintiff's vital signs and gave Plaintiff ibuprofen for pain. Plaintiff asked the nurse to give him an x-ray, but the nurse stated, "You don't need an x-ray, there is nothing we can do to help your face. I can tell that there is nothing broke in your face that you will be okay." (*Id*. ¶ 164 (verbatim).) However, Plaintiff later did receive an x-ray. (*Id*. ¶ 168.) Plaintiff received a Disciplinary Offense Report ("DOR") for the incident, even though he did not fight back against the inmate who attacked him. This DOR was later dismissed. (*Id*. ¶¶ 166, 168.)

Approximately two weeks after the incident, a non-defendant correctional officer tried to move Plaintiff back to the same tier on which he was assaulted. Plaintiff refused, because he was afraid, and he then received another DOR for disobeying orders. (*Id*. ¶ 169.) Plaintiff was later found guilty of this DOR, but he did not appeal because he was scared of retaliation. In September of 2014, Defendant Dobler placed Plaintiff back on that same tier. (*Id*. ¶¶ 173-74.) Two days later, Plaintiff was moved to a different tier, but was again threatened. Plaintiff was then placed in isolation due to the danger he faced in

MEMORANDUM DECISION AND ORDER - 2

general population. After a brief stint in another prison, Plaintiff was placed in an ISCC "close custody" unit known as Unit E1. Plaintiff claims that this unit was double-celled, notwithstanding a previous court order requiring single-celling. Plaintiff alleges that ISCC staff members "started retaliating against Plaintiff." (*Id*. ¶ 181.)

Plaintiff was considering filing a civil lawsuit, potentially with the aid of the ACLU, against prison officials and prison medical staff. Plaintiff claims that he learned from Defendants Corporal Stelzer and Sergeant Segadelli that IDOC and ISCC administrators had instructed Stelzer and Segadelli to "retaliate" against Plaintiff for considering such a lawsuit. (*Id*. ¶ 185.) In February of 2015, unidentified administrators allegedly locked down half of Plaintiff's close custody unit and commanded the inmates "not to speak to each other regarding grievances, tort claims, or [the] A.C.L.U. lawsuit." (*Id*. ¶ 186.)

> The next day, Defendant Segadelli held a unit meeting with the inmates and stated: So you want to complain? Well I gave you life and I can take it away, Admin gave me permission to send any of you, anywhere I decide to." Defendant Stelzer, who was at the meeting also, said that he "would pull the . . . protective custody status[] of any E1 inmate that 'complains' again." (Id. ¶ 187.) Stelzer continued, "I will put you [Plaintiff] back out where you got smashed out and you'll get smashed out again, then I'll Ad-seg you for the rest of your incarceration.

(*Id*.) Plaintiff claims that these threats caused other inmates, who were considering joining with Plaintiff in pursuing civil rights litigation, to decide not to do so.

Plaintiff claims also that Defendant Grievance Coordinator Hallum stole a grievance that Plaintiff filed in September 2014. Plaintiff claims that Hallum tried to cover up this "obvious theft and destruction" of the grievance by "falsely claim[ing]

**MEMORANDUM DECISION AND ORDER - 3**

negligence." (*Id.* ¶ 190.) With respect to another grievance filed by Plaintiff, Defendant Segadelli allegedly "lied to cover up the truth of relevant events" when responding to the grievance, and Defendant Deputy Warden Kenneth Bennett allegedly lied also when he acted as the Level 2 responder on the grievance. (*Id.* ¶¶ 192-93.)

Plaintiff names, as defendants in this case, Sergeant Dobler, Sergeant Segadelli, Grievance Coordinator Hallum, Deputy Warden Bennett, and Warden Blades. Plaintiff brings suit against Corizon also, the private entity providing medical treatment to Idaho state inmates under contract with the IDOC. Plaintiff seeks monetary, injunctive, and declaratory relief.

The Court issued an initial review order denying Plaintiff's request for appointment of counsel and denying Plaintiff's request for a preliminary injunction. The Court did not allow Plaintiff to proceed on his claims against the IDOC or his declaratory relief claims against any Defendant. The Court further found Plaintiff had not stated a colorable procedural due process claim; had not alleged nor suffered any injury to his right of access to the courts; and did not allow Plaintiff to proceed on his Eighth Amendment medical treatment claims.

The Court did find Plaintiff sufficiently alleged that Defendants Segadelli and Stelzer retaliated against him for engaging in protected activity, and that Plaintiff stated a colorable Eighth Amendment failure to protect claim against Defendant Dobler.

# ANALYSIS

**1.      Plaintiff's Motion Requesting Sanctions be Imposed on Defendants (Dkt. 24)**

In this motion, Plaintiff requests sanctions be imposed upon Defendants because Defendants' answer did not provide evidence in support of the denials therein, and stated that Defendants "lacked information sufficient to form a belief" about certain averments in the complaint. Plaintiff claims Defendants intentionally lied in their answer, and he requests $300 be imposed as a sanction because he had to reply to the answer.

Plaintiff's motion will be denied. The Court has reviewed Defendants' Answer (Dkt. 20) and finds it complies with Fed. R. Civ. P. 8. Defendants are required to provide a short and plain statement of their defenses to each claim asserted, and did so. Fed. R. Civ. P. 8(b)(1). Defendants may respond that they lack knowledge or information sufficient to form a belief about the truth of any allegation, and such a statement has the effect of a denial. Fed. R. Civ. P. 8(b)(5). Further, Plaintiff is not permitted to reply to Defendants' answer without leave of the Court, and no leave was given in this case. Fed. R. Civ. P. 12(a)(1)(C) (indicating a reply to an answer is due within 21 days after being served with an order to reply). And finally, Plaintiff may not request sanctions because he failed to follow the safe harbor provisions of Fed. R. Civ. P. 11(c)(2), which required him to serve the motion upon Defendants twenty-one days prior to filing it. There is no indication Plaintiff followed Fed. R. Civ. P. 11.

**2.      Plaintiff's Motion for Emergency Preliminary Injunctive Relief (Dkt. 26)**

In this motion, Plaintiff requests emergency injunctive relief in the form of a transfer to ICI-O in Orofino, Idaho, with restoration of all privileges. He claims the

**MEMORANDUM DECISION AND ORDER  - 5**

allegations in the Complaint establish irreparable injury if the injunction is not granted, and that since filing the complaint, he was subject to cell searches, he was required to move cells, and his legal work was confiscated. Plaintiff contends he will prevail on the merits for the reasons stated in the complaint, and that an injunction will be in the public's interest.

Upon review of the allegations in the motion, the Court relies upon its earlier determination in its Initial Review Order (Dkt. 10) denying the injunction request. A prisoner has no constitutional right to be housed at a particular institution. *Meachum v. Fano*, 427 U.s. 215, 224 (1976). Plaintiff has failed to come forward with any new evidence other than the allegations in his complaint, albeit embellished with allegedly new incidents paralleling those described in the complaint. The Court cannot conclude that Plaintiff is likely to prevail on the merits of his claims or that the public interest favors an injunction.

### 3.   Plaintiff's Motion for Partial Summary Judgment (Dkt. 28)

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. Once the Court

**MEMORANDUM DECISION AND ORDER  - 6**

considers all the evidence presented by the parties, Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."

Plaintiff argues he is entitled to summary judgment on his retaliation claims asserted under the First Amendment against Defendants Blades, Segadelli, and Stelzer based upon the general denials asserted in Defendants' answer to paragraphs 186, 187, and 188 of Plaintiff's complaint. Paragraph 185 describes that, on February 10, 2015, in retaliation for submission of letters to the ACLU, Plaintiff along with other inmates were separated and subject to lock down in retaliation for threatening to sue.

Paragraph 187 alleges that, on February 11, 2015, Cpl. Stelzer and Sgt. Segadelli held a meeting at Unit E1, and threatened the inmates with the following threat:

> So you want to complain? Well I gave you life and I can take it away, Admin gave me permission to send any of you, any where I decide to, and would pull the P.C status (protective custody status) of any E1 inmate that complains again, whether the inmate complains by concern forms, grievance, lawsuit or speaks to the ACLU, and if any inmate (Plaintiff) did complaint after this meeting Defendant Cpl. Stelzer said, I will put you back out where you got smashed out and you'll get smashed out again, then I'll Ad-Seg you for the rest of your incarceration.

Paragraph 188 alleges that the threats caused other inmates seeking to support Plaintiff in a class action lawsuit to stop litigation and halt the grievance process.

Defendants in their answer at paragraph two averred that every allegation not expressly admitted was denied. With regard to paragraphs 185 and 189, Defendants denied the allegations. There were no other specific denials of paragraphs 186-188. Plaintiff argues that the failure by Defendants to specifically deny paragraphs 186, 187

**MEMORANDUM DECISION AND ORDER - 7**

and 188 constitutes an admission of the allegations, and entitles him to summary judgment.

Contrary to Plaintiff's argument, Fed. R. Civ. P. 8(b)(3) permits Defendants to generally deny allegations of a pleading by general denial. Paragraph two of Defendants' answer is sufficient, under Rule 8, to constitute a general denial of paragraphs 186-188 of Plaintiff's complaint, as those paragraphs were not expressly admitted or otherwise responded to. Plaintiff's request for summary judgment on the grounds that Defendants' answer failed to deny the allegations in the complaint will therefore be denied.[1]

Turning to the merits, a First Amendment retaliation claim must allege the following five elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004).  Bare allegations of arbitrary retaliation are insufficient to state a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985).

Plaintiff points to two concern forms and one grievance (Dkt. 25-2) he believes demonstrate that Defendant Segadelli and Defendant Stelzer do not deny Plaintiff's accusations of retaliatory threats allegedly made by Defendants. However, in reviewing the actual documents, the concern form dated March 11, 2015, indicates the response to the grievance about Defendants threatening Plaintiff explained that Defendants held a tier

---

[1] Plaintiff mentioned other paragraphs of his Complaint that Defendants generally denied. Defendants' denials are adequate under Rule 8(b)(3), and summary judgment will not be granted as to specific paragraphs that Defendants answered by general denial.

**MEMORANDUM DECISION AND ORDER  - 8**

meeting to inform the protective custody population that continued violence would result in placement of offenders into administrative segregation. (Dkt. 25-2 at 19.) Further, the reviewer of the grievance, Kenneth Bennet, denies that any threats were made, and notes that Plaintiff's grievance is copied "verbatim from another offender." (Dkt. 25-2 at 20.) The grievance was then denied by Warden Blades.

According to Defendant Segadelli, the lockdown that occurred on February 10, 2015, was not an attempt at retaliation, but rather due to a significant battery and altercation that occurred in offender Brown's housing unit. After the lockdown, Defendants Segadelli and Stelzer went to Pod E-1 to conduct a tier meeting, and inform offenders that such activity would not be tolerated. Aff. of Segadelli (Dkt. 37-2.) Segadelli denies knowing of any lawsuit Plaintiff or other inmates were considering. *Id.*

Defendants have offered contrary evidence disputing Plaintiff's account that the lockdown that occurred on February 10, and the tier meeting that occurred on February 11, were not an attempt by Defendants to threaten or retaliate against Plaintiff or other offenders. Defendants' affidavit further establishes that the actions taken support an inference that the lockdown and meeting were designed to advance legitimate correctional goals. Accordingly, Defendants have met their burden, and have established genuine issues of material fact with regard to Plaintiff's allegations of retaliation.

Plaintiff's motion for partial summary judgment will therefore be denied.

**MEMORANDUM DECISION AND ORDER - 9**

4.     **Plaintiff's Request for Subpoena Duces Tecum (Dkt. 34) and Plaintiff's Request for Subpoena (Dkt. 36)**

Plaintiff requests issuance of a subpoena duces tecum for purposes of testifying to inmates Jody Carr, Mark Fitch, Joseph Stanka, Joshua Bennett, Troy Carr, Mr. Wood, James Sukraw, Levi Hawkins, Erik Jon Payne, Charlie Smith, and former inmate Valdes (no first name given), who is out on parole and no address was given. However, subpoenas duces tecum are for trial testimony. Therefore, the motions and requests are premature. Plaintiff may file a motion for issuance of subpoenas duces tecum should a trial be set in this matter.

5.     **Plaintiff's Request for Leave of the Court to file a Motion Requesting Reconsideration of Appointment of Counsel (Dkt. 38) and Plaintiff's Request for Reconsideration of Appointment of Counsel (Dkt. 39)**

Here, Plaintiff requests the Court reconsider its earlier order denying Plaintiff's request for appointment of counsel. Plaintiff contends that inmate Jody Carr has, to date, drafted the pleadings on Plaintiff's behalf because Plaintiff suffers from a "handicap which makes him mentally unable to litigate this case on his own." The second motion, Docket 39, reiterates the request in Docket 38, and elaborates further regarding Plaintiff's "handicap." Plaintiff has attached certain records obtained from his high school indicating a less than stellar report card, which Plaintiff argues indicates his special needs stemming from his handicap of being mentally challenged. Plaintiff represents, however, that inmate Carr will still be able to assist Plaintiff in reading and understanding legal documents.

**MEMORANDUM DECISION AND ORDER - 10**

The documents attached to Plaintiff's motion indicate Plaintiff suffered behavioral issues in school, which included defiance of authority, refusal to follow directions in class, distracting behavior, poor use of class time, and difficulty paying attention. Other teachers, notably Plaintiff's Heath and Driver's Education teacher, noted Plaintiff was a "pleasure to have in class." Plaintiff received an "A" in Life Management skills, and "C's" and "B's in classes like music appreciation, US history, and world history. The records do not indicate a learning disability.

Even assuming Plaintiff suffers from a low educational level, a pro se prisoner's confusion or ignorance of the law is not, by itself, a reason to appoint counsel. Relatedly, that Plaintiff apparently has utilized the assistance of other inmates is not extraordinary, because this is a common circumstance for prisoners. *See Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) (per curiam). And, a low educational level is similarly not an extraordinary circumstance among prisoners requiring appointment of pro bono counsel. *See Hilbert v. Beard*, No. LA CV 14–00919–VBF–MAN, 2014 WL 4702305 (C.D. Cal. Sept. 19, 2014) (ignorance of the law, low literacy levels, lack of legal knowledge, and the need for assistance are not extraordinary circumstances).

Plaintiff has not established "exceptional circumstances" warranting the appointment of counsel under the standards applicable in the Ninth Circuit. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). Nor has Plaintiff met his burden under *Louen v. Twedt*, 2007 WL 915226 (E.D.Cal. March 26, 2007), establishing grounds

for reconsideration of the Court's prior order.[2] Plaintiff has offered no compelling reason for the Court to reconsider its previous denial of appointment of counsel at this time. Therefore, Plaintiff's second request for appointment of counsel will be denied.

**6.     Plaintiff's Request for Leave of the Court to File His Motion Requesting Sanctions Be Imposed on Defendants for Failure to Comply With F.R.C.P. Rules Regarding Discovery and Disclosures (Dkt. 41)**

Plaintiff filed this motion on October 23, 2015. Plaintiff represents he seeks to file a motion requesting sanctions pursuant to Fed. R. Civ. P. 37(b) for Defendants' failure to respond to discovery requests. Plaintiff represents he served his first set of interrogatories and requests for production of documents on September 10, 2015, and that Defendants did not timely respond.

Plaintiff's request for leave to file a motion requesting sanctions will be denied. It is improperly brought pursuant to Fed. R. Civ. P. 37(b), because the Court has not ordered Defendants to answer Plaintiff's discovery requests such that sanctions can be imposed pursuant to Fed. R. Civ. P. 37(b).

Plaintiff's motion is properly considered under Fed. R. Civ. P. 37(a), which requires first that Plaintiff move to compel responses that have not been timely answered. Before Plaintiff may do so, Plaintiff must first attempt, in good faith, to confer or attempt to confer with opposing counsel. Fed. R. Civ. P. 37(a)(1). A motion to compel must be accompanied by a certification that the movant has done so. *Id*. Under this Court's local rules, pro se prisoners may meet the requirement to confer via written communications.

---

[2] "Courts have distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice." *Louen*, 2007 WL 915226 (E.D. Cal. Mar. 26, 2007).

**MEMORANDUM DECISION AND ORDER - 12**

Dist. Idaho L. Rule 37.1. Because Plaintiff failed to follow Fed. R. Civ. P. 37(a) and establish he has attempted, in good faith, to confer with opposing counsel, his motion seeking what the Court construes as a motion to compel will be denied.

Defendants are, however, reminded of their obligation to timely respond to discovery requests, and that the Court may impose sanctions upon Defendants for an unreasonable failure to answer appropriately propounded discovery requests.

7. **Plaintiff's Request for Leave of the Court to File a Motion to Compel Discovery and Disclosures (Dkt. 42)**

Here, Plaintiff seeks leave to file a motion to compel, asserting that Defendants have not timely made their initial disclosures, and did not respond to Plaintiff's discovery requests on or before October 10, 2015. For the reasons stated above, Plaintiff's motion will be denied at this time. Plaintiff filed his request seeking leave to file a motion to compel on October 23, 2015. Plaintiff must first attempt to confer with opposing counsel. Any motion to compel must be accompanied by a certification that Plaintiff has, in good faith, attempted to confer. It does not appear, given the short length of time between requesting the responses and the filing of the motion, that Plaintiff could have satisfied the confer requirement.

If, after satisfying the confer requirement, Defendants refuse to answer Plaintiff's interrogatories, Plaintiff may file a motion to compel. However, Plaintiff's motion must meet all of the requirements of Fed. R. Civ. P. 37(a), and the Court's local rules. Dist. Idaho L. Rule 37.2 requires that a memorandum filed in support of a rule 37 discovery motion "must provide verbatim each disputed interrogatory, request, answer, response, or

**MEMORANDUM DECISION AND ORDER - 13**

objection that underlies the motion. Generally those items should be set forth within the memorandum. If they are too numerous, however, the moving party may attach only the disputed items as an addendum to the memorandum. The memorandum must also describe each issue in dispute and include a brief description of each party's arguments and authorities."

Plaintiff's motion seeking leave to file a motion to compel will therefore be denied at this time.

### 8.    Plaintiff's Request for Leave of the Court to File His Motion Requesting the Court Find Defendants in Contempt of Court (Dkt. 43)

Plaintiff's motion requesting leave to file a motion finding Defendants in contempt of court is a re-iteration of his motion seeking leave to file a motion to compel, and his earlier motions discussed above complaining that Defendants have not answered his discovery requests or served initial disclosures. Plaintiff's motion will therefore be denied. Plaintiff must first file a motion to compel in compliance with the rules the Court has cited. Any motion finding Defendants in contempt is premature, and Plaintiff's request will therefore be denied.

## CONCLUSION

Plaintiff is held to the same standard as all litigants appearing before this Court. He must follow the Federal Rules of Civil Procedure and local rules of this District. If Defendants are indeed refusing to answer legitimately propounded discovery requests, the Court will entertain a motion to compel, provided the motion complies with the rules governing such motions. In the event the motion is granted, the Court may entertain a request for sanctions pursuant to Fed. R. Civ. P. 37(b). However, a motion for sanctions for failure to follow the Court's orders is premature at this time.

Plaintiff is cautioned that he may not file serial motions requesting the same relief. Future attempts to file redundant motions and serial motions will be denied pursuant to the Court's order, (Dkt. 10), which states that "no party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter then pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled." Future violations of the Court's order will be enforced by the Court.

**MEMORANDUM DECISION AND ORDER - 15**

## **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Motion Requesting Sanctions be Imposed on Defendants (Dkt. 24) is **DENIED**.

2) Plaintiff's Motion for Emergency Preliminary Injunctive Relief (Dkt. 26) is **DENIED.**

3) Plaintiff's Motion for Partial Summary Judgment (Dkt. 28) is **DENIED.**

4) Plaintiff's Motion Requesting Subpoena Duces Tecum (Dkt. 34) is **DENIED**.

5) Plaintiff's Request for Supboena (Dkt. 36) is **DENIED**.

6) Plaintiff's Request for Leave of the Court to file a Motion Requesting Reconsideration of Appointment of Counsel (Dkt. 38) is **DENIED.**

7) Plaintiff's Request for Reconsideration of Appointment of Counsel (Dkt. 39) is **DENIED.**

8) Plaintiff's Request for Leave of the Court to File his Motion Requesting Sanctions (Dkt. 41) is **DENIED.**

9) Plaintiff's Request for Leave of the Court to File a Motion to Compel Discovery and Disclosures (Dkt. 42) is **DENIED.**

10) Plaintiff's Request for Leave of the Court to File His Motion Requesting the Court Find Defendants in Contempt of Court (Dkt. 43) is **DENIED.**

Dated: **November 13, 2015**

Honorable Candy W. Dale
United States Magistrate Judge